<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SUN CHEMICAL CORPORATION, | Civil Case No. 13-4069 |
| | (FSH) |
| Plaintiff, | |
| | **<u>OPINION & ORDER</u>** |
| v. | |
| | March 2, 2015 |
| FIKE CORPORATION, et al., | |
| Defendants. | |

<u>**HOCHBERG, District Judge:**</u>

This matter comes before the Court upon Defendants' Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) [Dkt. No. 31]. The Court has reviewed the submissions of the parties and considers the motions pursuant to Federal Rule of Civil Procedure 78.

**I. BACKGROUND**

Plaintiff Sun Chemical's U.S. Ink Division operates an ink manufacturing facility located in East Rutherford, New Jersey. Defendants Fike Corporation and Suppression Systems, Inc. ("SSI") market and install fire explosion and protection systems.

In March 2011, Sun sought to purchase a new dust collection system, including an explosion protection system, for its facility. SSI allegedly provided Sun with marketing materials and information concerning the available explosion protection systems. Ultimately, Sun purchased an explosion suppression/isolation system rather than a venting system.

Sun contends that Defendants allegedly represented: that the benefit of the suppression/isolation system is that an explosion is contained within the unit and deflagration is extinguished; that the system decreases the severity of an explosion to safe levels and prevents catastrophic destruction; that chemical isolation prevents pressure piling and a secondary explosion; that the suppression system extinguishes the flame within the dust collector, preventing fire damage; that the system prevents possible death or injury to personnel; that it minimizes costly replacement and/or repair of the dust collector; that it protects profits by reducing lengthy plant shutdown and loss of product; that the explosion venting system was not necessary due to the installation of the explosion suppression system; and that the suppression system releases agent into any interconnected ducting that contains combustible material to prevent flame propagation. Sun contends that it relied upon these alleged representations.

Sun claims that it purchased a suppression/isolation system in May 2012, which was installed between June and September 2012. On October 1, 2012, SSI purportedly informed Sun that the system was fully installed and operational and Sun placed the new system into operation. On October 9, 2012, the first full day of regular operations for the new system, a fire allegedly ignited in the dust collection system. The newly purchased explosion protection system was triggered, releasing pressure and suppressant agent into the dust collection system, which Sun alleges resulted in a fire and an explosion. Sun contends that the suppressant agent from the isolation unit purportedly failed to adequately infiltrate the ducting that contained combustible material and purportedly failed to suppress and isolate the fire. The fire and explosion allegedly injured several workers and damaged the facility.

Plaintiff seeks recovery under the New Jersey Consumer Fraud Act ("CFA") for compensatory, incidental, consequential, and treble damages and the cost of suit, attorneys' fees, and expert witness fees.

## II. STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted).

When considering a motion to dismiss under *Iqbal*, the Court must conduct a two-part analysis. "First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (internal citations and quotations omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 129 S. Ct. at 1949 (internal quotations and alterations omitted).

### III. DISCUSSION

The CFA prohibits "[t]he act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby." N.J.S.A. § 56:8-2. It permits recovery of treble damages and reasonable attorneys' fees. N.J.S.A. § 56:8-19. "The rights, remedies and prohibitions accorded by [the CFA] provisions" are "to be in addition to and cumulative of any other right, remedy or prohibition accorded by the common law or statutes of [New Jersey], and nothing contained herein shall be construed to deny, abrogate or impair any such common law or statutory right, remedy or prohibition." N.J.S.A. § 56:8-2.13.

The parties dispute whether the CFA claim is subsumed by New Jersey's comprehensive products liability statute. The Products Liability Act ("PLA"), N.J.S.A. § 2A:58C-2, "established the sole method to prosecute a product liability action" such that "only a single product liability action remains." *Tirrell v. Navistar Int'l, Inc.*, 248 N.J. Super. 390, 398-99 (App. Div. 1991). "The language chosen by the Legislature in enacting the PLA is both expansive and inclusive, encompassing virtually all possible causes of action relating to harms caused by consumer and other products." *In re Lead Paint Litig.*, 191 N.J. 405, 436-47 (2007). It "effectively creates an exclusive statutory cause of action for claims falling within its purview." *Repola v. Morbark Indus., Inc.*, 934 F.2d 483, 492 (3d Cir.1991). It subsumes any cause of action "for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C-1(b)(3). "Harm" is defined as, "(a) physical

4

damage to property, other than to the product itself; (b) personal physical illness, injury or death; (c) pain and suffering, mental anguish or emotional harm; and (d) any loss of consortium or services or other loss deriving from any type of harm described in subparagraphs (a) through (c) of this paragraph." N.J.S.A. § 2A:58C-1(b)(2).

"Courts have found that the NJPLA subsumes common law and statutory fraud claims so long as the harm alleged was caused by a product." *Montich v. Miele USA, Inc.*, 849 F. Supp. 2d 439, 456 (D.N.J. 2012). "[T]he language of the PLA represents a clear legislative intent that, despite the broad reach we give to the CFA, the PLA is paramount when the underlying claim is one for harm caused by a product . . . [Where] the heart of plaintiffs' case is the potential for harm caused by [defendants' product] . . . , plaintiffs may not maintain a CFA claim." *Sinclair v. Merck & Co., Inc.*, 195 N.J. 51, 66 (2008); *see McDarby v. Merck & Co., Inc.*, 401 N.J. Super. 10, 96-99 (App. Div. 2008) (finding "no basis, in legislative history, statutory language or Court decisions, to conclude that plaintiffs can maintain separate causes of action under the PLA and the CFA in this case.").

The analysis of whether the PLA subsumes a CFA claim is based on "the essential nature of the claim presented and . . . whether the claim would traditionally be considered a products claim." *Worrell v. Elliott & Frantz*, 799 F. Supp. 2d 343, 351 (D.N.J. 2011) (quoting *Rodnite v. Hovnanian Enters., Inc.*, No. 08-3787, 2010 WL 3079576, at *3 (D.N.J. Aug. 5, 2010)). Where the "essential nature of the claim" is "that the product was not reasonably fit, suitable or safe for its intended purpose because it either contained a manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner," the PLA subsumes the claim. *Koruba v. Am. Honda Motor Co.*, 396 N.J. Super. 517, 531 (App. Div. 2007) (quoting N.J.S.A. 2A:58C-2.); *see New Hope Pipe Liners, LLC v. Composites One, LCC*, Civ. No. 09-

3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009) ("In summary, if the facts of a case suggest that the claim is about defective manufacture, flawed product design, or failure to give an adequate warning, then the PLA governs and the other claims are subsumed."). Thus, where the core issue is a "defect inherent in the product," then the PLA governs. *See Gupta v. Asha Enterprises, L.L.C.*, 422 N.J. Super. 136, 146 (App. Div. 2011); *Becker v. Smith & Nephew, Inc.*, No. CIV. 14-5452 WHW CLW, 2015 WL 268857, at *3 (D.N.J. Jan. 20, 2015) ("The PLA further defines a design defect as a danger inherent in a product that has been manufactured as intended.").

On the other hand, where a claim does not involve harm caused by the product itself, the claims are not subsumed. *See Worrell v. Elliott & Frantz*, 799 F. Supp. 2d 343, 353 (D.N.J. 2011). For instance, the PLA does not subsume a claim based on an otherwise defect-free product which was allegedly installed and tested negligently. *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530-31 (D.N.J. 1999) (finding negligence claim was not subsumed based on allegation that defendant "improperly install[ed] properly-functioning products."); *see Fid. & Guar. Ins. Underwriters, Inc. v. Omega Flex, Inc.*, 936 F. Supp. 2d 441, 448 (D.N.J. 2013) ("[A] cause of action based on the negligent installation of a properly functioning, non-defective product is not subsumed by the PLA under New Jersey law. . . [but] a negligence claim based upon [defendant's] alleged installation and sale of an already defective product . . . falls squarely within the ambit of the PLA and is subsumed by the Act."). Nor does it subsume a claim where the seller purportedly misrepresented the suitability of the product. *See Knipe v. SmithKline Beecham*, 583 F. Supp. 2d 602, 619 (E.D. Pa. 2008) (finding claim was not subsumed where company allegedly misrepresented the suitability of pharmaceutical for off label pediatric use in marketing material) (applying New Jersey law); *New Hope Pipe Liners, LLC*, 2009 WL

6

4282644, at *3 (finding claim not subsumed where defendant allegedly made "affirmative misrepresentations as to the suitability" of a resin for a particular type of pipe-lining rehabilitation); *Gupta*, 422 N.J. Super. at 146 (rejecting argument that claim that defendant misrepresented product under the CFA is subsumed because "plaintiffs' claims focus on the conduct of [defendant's] employees in supplying the wrong order, not on any 'defect' in the [product]."); *Rehberger v. Honeywell Int'l, Inc*., Civ. No. 3:11-0085, 2011 WL 780681, at *3-5 (M.D. Tenn. Feb. 28, 2011) ("[T]he gravamen of the plaintiff's claim is that he would not have spent money purchasing the F50F if the defendant had not made certain misrepresentations and omissions," rather than that the product was defective for its intended use) (applying New Jersey law).

A claim will not survive merely because it is labeled as "representation-based" if the core of the issue is, in fact, the danger inherent in a product. *See Indian Brand Farms v. Novartis Crop Prot., Inc*., 890 F. Supp. 2d 534, 547-48 (D.N.J. 2012) ("While Plaintiffs also clearly allege that Novartis misrepresented that AG600 controlled certain insects without inflicting adverse effects on plants or soil and that Plaintiffs relied on these misrepresentations in purchasing and using AG600 to treat their blueberry plants, the heart of Plaintiffs' dissatisfaction is that the product itself, AG600, caused harm to the blueberry plants."); *Arlandson*, 792 F. Supp. 2d at 701-04 ("Plaintiffs' NJCFA allegations here are that Defendants Hartz and Summit marketed and continued to market their products to consumers as safe when used as intended, when they knew that the products posed substantial risk regardless of application and use. . . [T]he core issue in Plaintiff's claims is 'harm caused by a product.'"); *Schraeder v. Demilec (USA) LLC*, No. CIV. 12-6074 FSH, 2013 WL 3654093, at *4 (D.N.J. July 12, 2013) ("[Although] [plaintiffs] base their CFA claim on fraudulent misrepresentations made by Demilec, . . . the essence of

7

Plaintiffs' real claim . . . sounds in products liability; it asserts that Demilec failed to warn of the potential health issues that could occur if their product was not mixed correctly, which resulted in harm from the product."); *Brown ex rel. Estate of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 517 (D.N.J. 2002) (finding claim that cigarette manufacturers misrepresented the safety of the product was subsumed because the core issue was harm caused by a product); *McDarby v. Merck & Co.*, 401 N.J. Super. 10, 95 (App. Div. 2008) ("[Although] [t]he gravamen of plaintiffs' consumer fraud claim was that Merck marketed Vioxx fully aware of its cardiovascular risk but made misrepresentations [regarding its safety], . . . in essence, [it] is a claim of failure to warn of dangers inherent in Vioxx cognizable under the PLA."); *see also Brown v. Abbott Labs., Inc.*, No. 10 C 6674, 2011 WL 4496154, at *3-4 (N.D. Ill. Sept. 27, 2011) (citations omitted) (dismissing NJ CFA "representation-based" claim because alleged misrepresentation was, in fact, based on failure to warn of a purported danger).

Here, there are sufficient allegations that the harm allegedly suffered by Plaintiff was representation based. Plaintiff alleges that it sought Defendants' advice as to the suitability of particular explosion suppression systems, and that Defendants purportedly represented that an explosion suppression system would be suitable, and that explosion venting was unnecessary. (Compl. ¶¶ 27-29, 33, 34). At this stage, Plaintiffs do not allege that Defendant's product was flawed or defective; that Defendant failed to warn Plaintiff regarding a particular danger; or that Defendant's product was improperly designed. Taking the facts as pled in the Complaint as true for the purposes of a motion to dismiss and giving Plaintiff the benefit of all favorable inferences, the Court cannot say as a matter of law that the "essential nature" of Plaintiff's claim is products liability, particularly where Plaintiff was careful to not allege that the product "contained a manufacturing defect, failed to contain adequate warnings or instructions, or was

8

designed in a defective manner." Nor can the Court determine, based on the pleadings, that "the core issue is the harmfulness of the product," as distinguished from representations regarding its suitability, installation, or testing. *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 703 (D.N.J. 2011). However, discovery may reveal that the real issue is a "defect inherent in the product," rather that Defendants' alleged representations regarding the product.   As such, whether Plaintiff's claim is for "harm caused by a product" will be tested at summary judgment. *See Francis E. Parker Mem'l Home, Inc. v. Georgia-Pac. LLC*, 945 F. Supp. 2d 543, 554 (D.N.J. 2013) (denying dismissal where the "CFA and PLA claims brought here are not incompatible, at least not at the current stage of review while discovery is ongoing. Both classes may be related but are distinct, and it is not yet certain the factual degree to which consumers have experienced damage to the PrimeTrim but not to adjacent materials."); *Worrell v. Elliott & Frantz*, 799 F. Supp. 2d 343, 352 (D.N.J. 2011) (finding that, where there was factual uncertainty as to whether the product itself contained a defect, negligence and PLA claim could proceed because "there are sufficient factual disputes that prevent the Court from determining the appropriate cause of action at the summary judgment stage."); *Thomas v. Ford Motor Co.*, 70 F. Supp. 2d 521, 530-31 (D.N.J. 1999) ("I shall deny Ford's motion to dismiss . . . since it may yet be proved that Ford improperly installed otherwise well-functioning and non-defective [products].")[1]

## IV. CONCLUSION & ORDER

**IT IS** this 2nd day of March, 2015, hereby

---

[1] Plaintiffs have also alleged facts sufficient to survive a motion to dismiss that the product—a suppression system allegedly marketed and offered to the public—was "merchandise" within the meaning of the CFA. *See Naporano Iron & Metal Co. v. Am. Crane Corp.*, 79 F. Supp. 2d 494, 509 (D.N.J. 1999).

**ORDERED** that Defendant's Motion to Dismiss Plaintiff's Complaint [Dkt. No. 31] is **DENIED**.

        **IT IS SO ORDERED**

        <u>**/s/ Faith S. Hochberg**</u>
        **Hon. Faith S. Hochberg, U.S.D.J..**