UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Not for Publication**

SUN CHEMICAL CORPORATION,

*Plaintiff,*

v.

FIKE CORPORATION AND SUPPRESSION SYSTEMS INCORPORATED,

*Defendants.*

Civil Action No. 13-4069 (JMV) (MF)

**OPINION AND ORDER**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court on a motion for sanctions filed by Defendants Fike Corporation ("Fike") and Suppression Systems Incorporated ("SSI") (collectively, "Defendants"). D.E. 217. Defendants seek sanctions against Plaintiff Sun Chemical Corporation ("Sun") and Plaintiff's counsel pursuant to N.J.S.A. 2A:15-59.1, N.J. Ct. R. 1:4-8, 28 U.S.C. § 1927, and Fed. R. Civ. P. 37(c)(1)(a). The Court reviewed all submissions in support and in opposition and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).[1] For the reasons stated below, Defendants' motion for sanctions is **DENIED**.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The Court issued an opinion on December 11, 2017 addressing the parties' cross-motions for summary judgment, D.E. 215 (the "SJ Opinion"), which includes a detailed recounting of the

---

[1] Defendants' brief in support of its motion for sanctions will be referred to hereinafter as "Def. Br." D.E. 217. Plaintiff's brief in opposition will be referred to hereinafter as "Pl. Opp." D.E. 220. Defendants' brief in reply will be referred to hereinafter as "Def. Reply." D.E. 221. Plaintiff filed a letter with notice of supplemental authority, D.E. 222, and the parties submitted further responses to that notice, D.E. 223, 224, 225.

background of this matter. To the extent relevant to Defendants' current motion for sanctions, the Court incorporates the factual and procedural history from the SJ Opinion.

On January 10, 2017, the parties filed cross-motions for summary judgment. D.E. 167, 168. On December 12, 2017, the Court granted Defendants' motion for summary judgment and denied Plaintiff's motion for summary judgment. D.E. 215, 216. On January 2, 2018, Defendants filed the instant motion for sanctions. D.E. 217. Plaintiff submitted a brief in opposition, D.E. 220, to which Defendants replied, D.E. 221. The parties subsequently filed additional submissions. D.E. 222, 223, 224, 225.

Defendants claim that "[a]s a result of Plaintiff's frivolous action, Defendants incurred the following expenses: Attorney's Fees and Costs: $1,276,493.94[;] Expert Costs: $1,079106.95[;] Electronic Discovery: $505,385.56." Def. Br. at 10. Accordingly, Defendants request a total award of $2,860,986.45 from Plaintiff and Plaintiff's counsel. *Id.*; D.E. 217-3 (proposed order).

## II. LEGAL ANALYSIS

Defendants seek sanctions pursuant to N.J.S.A. 2A:15-59.1, N.J. Ct. R. 1:4-8,[2] 28 U.S.C. § 1927, and Fed. R. Civ. P. 37(c)(1)(a). The Court examines Defendants' request for sanctions under each statute or rule in turn.

### a. N.J.S.A. 2A:15-59.1 and N.J. Ct. R. 1:4-8

New Jersey's Frivolous Litigation Statute, N.J.S.A. 2A:15-59.1 provides for sanctions against a party who engages in frivolous litigation. The statute provides that:

> A party who prevails in a civil action, either as plaintiff or defendant, against any other party may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time

---

[2] Defendants request sanctions pursuant to "N.J.S.A. 1:4-8." D.E. 217 at 10 ("Defendants are entitled to costs and attorney's fees under . . . N.J.S.A. 1:4-8."). It appears that Defendants instead meant to refer to New Jersey Court Rule 1:4-8 ("N.J. Ct. R. 1:4-8"). Therefore, the Court considers Defendants' motion pursuant to N.J. Ct. R. 1:4-8.

2

> during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous.
>
> . . . .
>
> In order to find that a complaint, counterclaim, cross-claim or defense of the nonprevailing party was frivolous, the judge shall find on the basis of the pleadings, discovery, or the evidence presented that either:
> (1) The complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury; or
> (2) The nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

N.J.S.A. 2A:15-59.1.

Reasonable fees and costs are imposed from the point at which the action became frivolous.

*DeBrango v. Summit Bancorp*, 328 N.J. Super. 219, 230 (App. Div. 2000). Under the statute,

> [a] complaint, counterclaim, cross-claim, or defense is deemed frivolous if it was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury, or if the nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity and could not be supported by a good faith argument for an extension, modification or reversal of existing law.

*Id.* (quotations and brackets omitted) (citing N.J.S.A. 2A:15–59.1(b)(1) and N.J.S.A. 2A:15–59.1(b)(2)). The New Jersey Supreme Court has observed that the statute "serv[es] a dual purpose. . . . On the one hand, the statute serves a punitive purpose, seeking to deter frivolous litigation. On the other hand, the statute serves a compensatory purpose, seeking to reimburse the party that has been victimized by the party bringing the frivolous litigation." *Toll Bros. v. Twp. of W. Windsor*, 190 N.J. 61, 67 (2007) (quotations omitted).

In turn, Rule 1:4-8 is "patterned after Rule 11 of the Federal Rules of Civil Procedure," *Lacroce v. M. Fortuna Roofing, Inc.*, No. 14-7329, 2017 WL 431768, at *3 (D.N.J. Jan. 31, 2017) (quotation omitted), and imposes sanctions on lawyers engaged in frivolous litigation. Rule 1:4-8 allows sanctions against an attorney "for an assertion made in a paper filed with the court when no rational argument can be advanced in its support, or it is not supported by any credible evidence, or it is completely untenable." *Noren v. Heartland Payment Sys., Inc.*, 448 N.J. Super. 486, 498 (App. Div. 2017) (citations omitted), *reconsideration denied*, 449 N.J. Super. 193 (App. Div. 2017).

Defendants argues that sanctions are appropriate under both N.J.S.A. 2A:15-59.1 and Rule 1:4-8 because Plaintiff had reason to believe that the "Blowback Theory," as pled in its Complaint, was frivolous and groundless. Def. Br. at 12-13. More specifically, Defendants point to the fact that Plaintiff continued to pursue its Blowback Theory despite the contradictory report and findings issued by the U.S. Chemical Safety and Hazard Investigation Board ("CSB") in January 2015. *Id.* Defendants claim that Plaintiff changed its theory of the case after the CSB issued its report, instead arguing the "Alarm Theory" of causation.[3] *Id.* Defendants argue that Plaintiff knew (or

---

[3] As the Court explained in the SJ Opinion, the Complaint claimed that Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 because the Defendants' system did not work as promised, *i.e.* Defendant's system was triggered by a fire, and the system caused an explosion that injured Plaintiff's workers and caused damage to Plaintiff's facility. SJ Opinion at 8-9 (citing Compl. at ¶¶ 47, 50, 66-75). The Court and the parties referred to this as the "Blowback Theory."

In Plaintiff's motion for summary judgment, however, Plaintiff raised a different theory of its case: the "Alarm Theory." The Alarm Theory posited that Defendants' system either did not include an audible alarm as promised, or that any audible alarm included in the system did not function as promised. SJ Opinion at 9 (citing Pl. SJ Br. at 18-19, 32-34). The Court noted that the Alarm Theory, however, was not raised in Plaintiff's Complaint. SJ Opinion at 9. The Court nevertheless considered Plaintiff's Alarm Theory on the merits when deciding the summary judgment motions because "Defendants fail[ed] to request any relief based on Plaintiff's modification [of its theory of liability]." SJ Opinion at 9.

4

should have known) that both the Blowback Theory and Alarm Theory were frivolous – and contends that sanctions are therefore appropriate.

As an initial matter, Rule 1:4-8 has no effect in this Court because it "solely governs proceedings in New Jersey state and municipal courts." *Ali v. Jersey City Parking Auth.*, No. 13-02678, 2014 WL 1494578, at *6 (D.N.J. Apr. 16, 2014), *aff'd*, 594 F. App'x 730 (3d Cir. 2014); *Ali v. Portfolio Recovery Assocs., LCC*, No. 13-4531, 2014 WL 1767564, at *1 (D.N.J. May 2, 2014) (stating that "New Jersey Court Rule 1:4–8 is inapplicable [to actions in federal court], as New Jersey Court Rule 1:1–1 provides that '[u]nless otherwise stated, the rules in Part I are applicable to the Supreme Court, the Superior Court, the Tax Court, the surrogate's courts, and the municipal courts'") (quoting N.J. Ct. R. 1:1-1)), *on reconsideration in part*, No. 13-4531, 2014 WL 4352316 (D.N.J. Sept. 2, 2014) (granting in part and denying in part motion for reconsideration on unrelated issues).

On the other hand, motions for sanctions pursuant to N.J.S.A. 2A:15-59.1 have been permitted in federal court. *Petron Scientech, Inc. v. Zapletal*, 701 F. App'x 138, 142 n.16 (3d Cir. 2017) (affirming district court's denial of attorney's fees pursuant to N.J.S.A. 2A:59.1(a)(1)); *Cole v. Town of Morristown*, 627 F. App'x 102, 107 (3d Cir. 2015) (affirming district court's denial of sanctions pursuant to N.J.S.A. 2A:15-59.1 because the motion did not comply with the mandatory requirements of the statute); *see also Antoine v. Superior Court of New Jersey*, No. 15-1267, 2015 WL 9582143, at *5 (D.N.J. Dec. 29, 2015) (denying motion for sanctions pursuant to N.J.S.A. 2A:15-59.1(a)(1); *Abbott v. Tacconelli's Pizzeria, LLC*, No. 10-1901, 2011 WL 2580374, at *4 (D.N.J. June 28, 2011) (denying motion for sanctions pursuant to N.J.S.A. 2A:15-59.1); *Tuscano v. Newhouse*, No. 11-4701, 2011 WL 5921372, at *3 (D.N.J. Nov. 28, 2011) (granting motion for sanctions pursuant to N.J.S.A. 2A:15-59.1); *Wasmanski v. T.G.I. Friday's Inc.*, No. 07-6001, 2008

WL 2645357, at *6 n.11 (D.N.J. July 2, 2008) (denying motion for sanctions pursuant to N.J.S.A. 2A:15-59.1).

Even if the Court considered the Rule in this instance, the Court finds that sanctions are inappropriate under either the Rule or N.J.S.A. 2A:15-59.1. First, as Plaintiff points out, the CSB report could not be used as evidence in the case. 42 U.S.C. § 7412(r)(6)(G) ("No part of the conclusions, findings, or recommendations of the Board relating to any accidental release or the investigation thereof shall be admitted as evidence or used in any action or suit for damages arising out of any matter mentioned in such report."). Second, even if the CSB report should have informed Plaintiff that any products liability claims were not likely to succeed, Plaintiff brought its claims under the New Jersey Consumer Fraud Act, ("CFA") N.J.S.A. 56:8-1, *et seq*. *See* Compl. (D.E. 1) at ¶¶ 66-75. Plaintiff's Complaint essentially alleged that Defendants' system did not function as promised. It is true that Plaintiff's changed their theory of the case and instead chiefly posited the Alarm Theory in their summary judgment briefing. However, as the Court noted in its SJ Opinion, Defendants failed to request any relief based on Plaintiff's change of theory. SJ Opinion at 9.

Lastly, Judge Hochberg denied Defendants' original motion to dismiss Plaintiff's Complaint on March 2, 2015. D.E. 71. In her opinion, Judge Hochberg found that Plaintiff had plausibly stated a claim of relief based on Defendants' representations – finding that the question of whether the Products Liability Act ("PLA"), N.J.S.A. 2A:58C-2, subsumed Plaintiff's CFA claims could not be determined based on the pleadings. *See* D.E. 71 at 8-9. As Judge Hochberg described:

> Here, there are sufficient allegations that the harm allegedly suffered by Plaintiff was representation based. Plaintiff alleges that it sought Defendants' advice as to the suitability of particular explosion suppression systems, and that Defendants purportedly represented

6

> that an explosion suppression system would be suitable, and that explosion venting was unnecessary. At this stage, Plaintiffs do not allege that Defendant's product was flawed or defective; that Defendant failed to warn Plaintiff regarding a particular danger; or that Defendant's product was improperly designed. Taking the facts as pled in the Complaint as true for the purposes of a motion to dismiss and giving Plaintiff the benefit of all favorable inferences, the Court cannot say as a matter of law that the essential nature of Plaintiff's claim is products liability, particularly where Plaintiff was careful to not allege that the product contained a manufacturing defect, failed to contain adequate warnings or instructions, or was designed in a defective manner. Nor can the Court determine, based on the pleadings, that the core issue is the harmfulness of the product, as distinguished from representations regarding its suitability, installation, or testing. However, discovery may reveal that the real issue is a defect inherent in the product, rather that Defendants' alleged representations regarding the product. *As such, whether Plaintiff's claim is for harm caused by a product will be tested at summary judgment.*

D.E. 71 at 8-9 (emphasis added) (quotations and citations omitted).[4] The fact that this Court later found on summary judgment that Plaintiff's CFA claims were subsumed by the PLA does not now necessitate a finding that Plaintiff's filings were frivolous. To the contrary, Judge Hochberg expressly recognized that potential outcome when denying the motion to dismiss. Summary judgment against a plaintiff certainly does not necessarily indicate that the case was futile or brought in bad faith. If Defendants truly thought that Plaintiff's Alarm Theory was futile, they should have requested relief based on Plaintiff's change of theory. *See* SJ Opinion at 9 ("The Court agrees with Defendants that Plaintiff changed its theory of the case after filing its Complaint. However, Defendants fail to request any relief based on Plaintiff's modification. Therefore, the

---

[4] Judge Salas, to whom this case was later assigned, denied Defendants' motion for reconsideration of Judge Hochberg's decision. D.E. 92. Judge Salas found that Defendants "failed to demonstrate the need to correct a clear error of law to prevent manifest injustice." *Id.* at 7.

7

Court considers Plaintiff's *post hoc* Alarm Theory on the merits in deciding the motions [for summary judgment].").

In sum, the Court finds that sanctions pursuant to N.J.S.A. 2A:15-59.1 and N.J. Ct. R. 1:4-8 would be inappropriate.

### b. 28 U.S.C. § 1927

Defendants next request sanctions pursuant to 28 U.S.C. § 1927 ("Section 1927") and the Court's inherent power to sanction. Defendants request litigation expenses, including attorney's fees.

Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C. § 1927.

"Section 1927 'requires a court to find an attorney has (1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct." *Ferguson v. Valero Energy Corp.*, 454 F. App'x 109, 112 (3d Cir. 2011) (quotation omitted). "The principal purpose of sanctions under § 1927 is the deterrence of intentional and unnecessary delay in the proceedings." *Id.* (internal quotation and bracket omitted). "[S]anctions may not be imposed under this statute against attorneys for vexatious and unreasonable multiplication of proceedings absent a finding that counsel's conduct resulted from bad faith, rather than misunderstanding, bad judgment, or well-intentioned zeal." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 142 (3d Cir. 2009). "Indications of this bad faith are findings that the claims advanced were meritless, that counsel

8

knew or should have known this, and that the motive for filing the suit was for an improper purpose such as harassment." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 188 (3d Cir. 2002) (quotation omitted). The attorney's actions "must be of an egregious nature, stamped by bad faith that is violative of recognized standards in the conduct of litigation." *Grider*, 580 F.3d at 142. The Third Circuit has cautioned that "[t]he power to sanction under § 1927 necessarily carries with it the potential for abuse, and therefore the statute should be construed narrowly and with great caution so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law." *LaSalle Nat. Bank v. First Connecticut Holding Grp., LLC.*, 287 F.3d 279, 289 (3d Cir. 2002) (quotation omitted).

"A court may resort to its inherent power to impose sanctions even if much of the misconduct at issue is also sanctionable under statute or rules of court." *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 278 F.3d 175, 189 (3d Cir. 2002) (citation omitted). "However, because of their very potency, inherent powers must be exercised with restraint and caution." *Id.* (brackets and citation omitted). "Although a court retains the inherent right to sanction when rules of court or statutes also provide a vehicle for sanctioning misconduct, resort to these inherent powers is not preferred when other remedies are available." *Id.* "Therefore, generally, a court's inherent power should be reserved for those cases in which the conduct of a party or an attorney is egregious and no other basis for sanctions exists." *Id.* (brackets and citation omitted); *see also Clientron Corp. v. Devon IT, Inc.*, -- F.3d --, 2018 WL 3293212, at *7 n.4 (3d Cir. July 5, 2018).

Defendants argue that they are entitled to costs and attorney's fees pursuant to Section 1927 and the Court's inherent power to sanction because Plaintiff and Plaintiff's counsel acted in bad faith. *See* Def. Br. at 15-16. Defendant argues that a finding of bad faith is appropriate because

9

"Plaintiff's Complaint alleged damages that clearly fell within the scope of the PLA, and even after Plaintiff was alerted to this fact, it continued to litigate this action under the CFA." Def. Br. at 16. However, as discussed *supra*, Judge Hochberg ruled that the Court was unable to be determined solely from Plaintiff's pleadings whether Plaintiff's CFA claims were subsumed by the PLA. Judge Hochberg further recognized that "discovery may reveal that the real issue is a defect inherent in the product, rather that Defendants' alleged representations regarding the product," and that the issue of "whether Plaintiff's claim is for harm caused by a product will be tested at summary judgment." D.E. 71 at 9. The fact that this Court later found on summary judgment that Plaintiff's CFA claims were subsumed by the PLA does not mean that Plaintiff's CFA claims were somehow filed or subsequently litigated in bad faith. Again, Judge Hochberg indicated that such an outcome was possible.[5] For the same reasons that the Court finds that sanctions are inappropriate under New Jersey law, here too Defendants are not entitled to sanctions. Defendants have not sufficiently demonstrated that Plaintiff (or Plaintiff's counsel) acted in bad faith in pursuing its CFA claims based on alleged misrepresentations made by Defendants. *Cf. Hilburn v. Bayonne Parking Auth.*, 562 F. App'x 82, 86 (3d Cir. 2014) (affirming district court's imposition of sanctions pursuant to Section 1927 based on bad faith when party filed a brief that was a "meaningless diversion" that "suggest[ed] a deliberate effort to delay proceedings and hamper opposing counsel's ability to represent his clients"); *Murphy v. Hous. Auth. & Urban Redevelopment Agency of City of Atl. City*, 158 F. Supp. 2d 438, 450 (D.N.J. 2001)

---

[5] Defendants also argue that sanctions are appropriate pursuant to Section 1927 because of Plaintiff's allegedly actions "to mislead Defendants regarding alternative causes of its damages and [by] destroy[ing] relevant evidence in its possession." Def. Br. at 16. Defendants claim that Plaintiffs discarded bearings and temperature logs and withheld "information regarding the repeated failures and prior fire events at various Sun facilities including the East Rutherford facility." *Id.* The Court discusses these allegations in below as to the alleged discovery violations.

(finding bad faith and imposing sanctions pursuant to Section 1927 when there was a "dearth . . . of any evidence whatsoever in the summary judgment record supporting Plaintiff's claims" and concluding that the plaintiff's "continued pursuit of this litigation constituted unreasonable and vexatious conduct which so multiplied the proceedings in this case as to constitute bad faith and merit the award of counsel fees and costs"), *aff'd sub nom.*, 51 F. App'x 82 (3d Cir. 2002).

Accordingly, the Court denies Defendants' request for sanctions pursuant to Section 1927 or the Court's inherent power.

### c. Fed. R. Civ. P. 37(c)(1)(a)

Lastly, Defendants argue that the Court should assess sanctions against Plaintiff pursuant to Federal Rule of Civil Procedure 37(c)(1)(a). The rule provides as follows:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: . . . may order payment of the reasonable expenses, including attorney's fees, caused by the failure[.]

Fed. R. Civ. P. 37(c)(1)(a). Rule 26(e), in turn, requires a party to supplement information provided in its initial disclosures and discovery when it learns that its previous disclosure was incomplete or inaccurate. Fed. R. Civ. P. 26(e).

As an initial matter, motions pursuant to Rule 37(c) typically request that the relevant information be excluded from the record. *See, e.g., Kelly v. Atl. Cape Fisheries, Inc.*, No. 15-6926, 2017 WL 4927665, at *2 (D.N.J. Oct. 30, 2017); *New Jersey Physicians United Reciprocal Exch. v. Med. Protective Co., Inc*, No. 13-2286, 2017 WL 3623801, at *12 (D.N.J. Aug. 23, 2017); *Wachtel v. Health Net, Inc.*, 239 F.R.D. 81, 104 (D.N.J. 2006). When considering the remedy of exclusion pursuant to Rule 37(c)(1), courts generally consider a number of factors: "(1) prejudice

or surprise to the [moving party]; (2) the ability of [the moving party] to cure the prejudice; (3) the likelihood of disruption; and (4) the [non-moving party's] bad faith or unwillingness to comply." *Wachtel*, 239 F.R.D. at 105; *see also New Jersey Physicians United Reciprocal Exch.*, 2017 WL 3623801, at *9.

Defendants argue that "Plaintiff had a legal obligation to preserve and produce the mixers, bearings and temperature logs as part of the on-going litigation, but instead intentionally withheld and destroyed the evidence in order to disrupt the pending litigation." Def. Br. at 19. Defendants also argue that Plaintiff should have informed Defendants about "the repeated bearing failures and prior fire events at various Sun facilities including the East Rutherford facility." *Id.*

The Court finds that sanctions pursuant to Rule 37(c)(1)(a) are not appropriate. First, Defendants do not allege that Plaintiff attempted to use any of the information that it allegedly withheld in its case. Second, Defendants claim that Plaintiff originally denied that it conducted any investigation into the cause of the explosion and that Defendants found out in subsequent testimony that Plaintiff had in fact conducted a "root cause analysis after the October 9, 2012 fire." Def. Br. at 18 (citing D.E. 217, Ex. I (Deposition of Paul Dudley) at 204:22-205:17).[6] However, it is at best unclear from the cited deposition testimony that a "root cause analysis" was undertaken.[7] Thus, one of Defendants' primary factual bases is, at best, questionable.

---

[6] It appears to the Court that the Defendants made an error in their brief when referring to the dates of the depositions of Dudley and Andrzejewski. *See* Def. Br. at 18 (stating that Andrzejewski's deposition was taken on January 28, 2016, and stating that Dudley's deposition was "subsequent" to Andrzejewski's deposition). Defendants' exhibits show that Dudley's deposition was on January 28, 2016 and Andzejewski's deposition was on July 26, 2017. D.E. 217, Ex. I, J.

[7] In the testimony cited by Defendants, the deponent was asked, in part, "what was your job for the investigation following the accident?" In response, the deponent answered:

12

Furthermore, Dudley's deposition testimony was taken on January 28, 2016 – about a year and a half *before* the testimony that Defendants point to in order to suggest that Plaintiff denied the existence of any investigation. *See* Def. Br. at 19 (citing D.E. 217, Ex. J (Deposition of Gary Andrzejewski)). Defendants' evidence shows that they knew about the existence of an investigation long *before* they claim they were told that there was no investigation. Lastly, Defendants provide no explanation as to why they waited to file their motion for relief until after the Court decided their motion for summary judgment. According to their own brief, they became aware that there was a "root cause" investigation based on deposition testimony taken on January 28, 2016. Def. Br. at 18. If Defendants believed that the January 28, 2016 deposition revealed that Plaintiff was potentially concealing discoverable information, Defendants should have sought timely relief. Defendants filed their motion for summary judgment on February 10, 2017. D.E. 167. The Court granted Defendants' motion for summary judgment on December 11, 2017. D.E. 215, 216. Defendants waited until January 2, 2018 to file their motion for sanctions. D.E. 217. Under these circumstances, the Court finds that any award of expenses would be fundamentally unfair.

---

> Well, following the accident, essentially, I became the individual, if you will, geographically located as a team member most close to the site, and therefore, I became the facilitator, coordinator of events; in other words, trying to make sure that all of the, for lack of a better term, "stakeholders," be it equipment manufacturers, consultants, attorneys, regulatory agency representatives were able to visit the site at a schedule that was convenient to all parties involved, make sure that they had the necessary equipment, if any, whether it was personal protective equipment or hardhats or whatever, to satisfy the requirements of everyone present.

D.E. 217, Ex. I. (Deposition of Paul Dudley) at 205:03-205:17.

13

For these reasons, the Court finds that sanctions pursuant to Fed. R. Civ. P. 37(c)(1)(a) would be inappropriate.

### III. CONCLUSION

For the reasons discussed above; and for good cause shown,

**IT IS** on this 20th day of July, 2018,

**ORDERED** that Defendants' motion for sanctions (D.E. 217) is **DENIED**.

Dated: July 20, 2018

_____
John Michael Vazquez, U.S.D.J.