RIKER DANZIG SCHERER HYLAND & PERRETTI  LLP
Lance J. Kalik, Esq. (lkalik@riker.com)
Jeffrey A. Beer, Jr., Esq. (jbeer@riker.com)
Headquarters Plaza
One Speedwell Avenue
Morristown, NJ 07962-1981
(973) 538-0800
*Attorneys for Plaintiff Sun Chemical Corporation*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SUN CHEMICAL CORPORATION,<br><br>                              Plaintiff,<br><br>                    v.<br><br>FIKE CORPORATION AND SUPPRESSION SYSTEMS INCORPORATED,<br><br>                              Defendants. | No.  2:13-CV-04069-JMV-MF |

## **FIRST AMENDED COMPLAINT**

Plaintiff Sun Chemical Corporation ("Sun" or "Plaintiff"), by and through its attorneys, Riker Danzig Scherer Hyland & Perretti, LLP, for its Complaint against Defendants Fike Corporation ("Fike") and Suppression Systems Incorporated ("SSI") (collectively, "Defendants") alleges as follows:

### **NATURE OF THE ACTION**

1. Sun brings this action against Fike and SSI pursuant to the New Jersey Consumer Fraud Act, N.J.S.A.  § 56:8-1 et seq., in order to recover economic damages caused by Fike and SSI's unlawful acts.  Specifically, Sun alleges that Fike and SSI made certain false promises and misrepresentations to Sun concerning Fike's explosion protection systems.  Based on those false promises and misrepresentations, Sun purchased and used the explosion suppression and isolation system recommended by Fike and SSI.  That system did not do what Fike and SSI represented that

it would do and, as a result, Sun has suffered millions of dollars of economic damages, including lost profits, lost worker productivity, workers' compensation payments to injured workers, repair and replacement of damaged equipment, extended shut-down of its East Rutherford black ink manufacturing facility, and costs associated with multiple government investigations (including associated attorney and expert fees).

## PARTIES

2.     Plaintiff Sun Chemical Corporation ("Sun") is a domestic corporation, organized under the laws of the State of Delaware, with its principal place of business located at 35 Waterview Boulevard, Parsippany, New Jersey, 07054.

3.     Upon information and belief, Defendant Fike Corporation ("Fike") is a domestic corporation organized under the laws of the State of Missouri, with its principal place of business located at 704 SW 10th Street, Blue Springs, Missouri, 64015.

4.     Upon information and belief, Defendant Suppression Systems, Inc. ("SSI"), is a domestic corporation organized under the laws of the State of Pennsylvania, with its principal place of business located at 301 S. 4th Street, Pennsburg, Pennsylvania, 18073.

5.     Upon information and belief, Defendant SSI is a wholly owned subsidiary of Fike.

## JURISDICTION AND VENUE

6.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 as this is an action between citizens of different states and the amount of controversy, exclusive of interest and costs, exceeds $75,000.

7.     Venue in this District and before this Court is proper pursuant to 28 U.S.C. § 1391 as Defendants may be found and transact business in this District, and a substantial part of the events giving rise to the claims occurred in this District.

**FACTUAL BACKGROUND**

8. Sun is an international producer of printing inks and pigments and a leading provider of materials to packaging, publication, coatings, plastics, cosmetics and other industrial markets.

9. Sun's U.S. Ink Division ("US Ink") operates an ink manufacturing facility located at 390 Central Avenue in East Rutherford, New Jersey (the "Facility"). The East Rutherford Facility is the division's largest producer of black cold-set news ink. Sun and its predecessors had manufactured black news ink at the Facility without major incident since the 1920s.

10. In early 2011, in order to ensure that Sun's East Rutherford Facility met the new state-of-the-art standards for worker protection, Sun began to investigate options for purchasing a new dust collection system for its black ink pre-mix operations at the Facility. The dust collection system was to be integrated with the existing black-ink pre-mix operations, with the goal of collecting fugitive dust particles generated during the course of the pre-mix operations.

11. In order to best protect its employees and equipment in a manner consistent with the new fire protection standards, and to prevent a potential deflagration from blowing back into the building and all the connections and/or potentially injuring Sun's workers, Sun sought to include an explosion protection system in the new dust collection system.

12. Accordingly, in or around March 2011, Sun reached out to United Air Systems ("UAS"), the manufacturer of the dust collector unit that Sun was considering purchasing, for information on explosion blowback prevention/isolation systems. UAS in turn contacted Fike, and requested that a representative of Fike get in touch with Sun to address its questions.

13. Beginning in or around March 2011, Lon L. Scholl ("Scholl"), Explosion Protection Account Manager for SSI, along with others from SSI, began communicating with Sun regarding the available explosion protection options.

14. SSI, a subsidiary of Fike, markets and installs fire and explosion protection systems. SSI holds itself out as being factory authorized and trained to provide comprehensive fire protection solutions through fire suppression, fire alarm and explosion protection systems. *See* http://www.suppressionsystems.com/about.html#history (last visited July 1, 2013). SSI is also a certified professional in its field, having been licensed by the State of New Jersey as a Fire Protection Equipment Contractor. *See* http://www.state.nj.us/dca/divisions/dfs/pdf/fpe_contractor_list.pdf (last visited July 1, 2013).

15. Sun's employees understood Scholl and SSI to be a representative of Fike, referring to Scholl as the "Fike representative," and identifying Scholl's company as "Fike Suppression Systems."

16. Sun asked SSI to present options for explosion suppression and venting so that Sun could compare the two types of protective devices. SSI was advised by Sun on or about March 23, 2011, that Sun expected these options to be in compliance with National Fire Protection Association ("NFPA") Standards 69 and 654.

17. The NFPA develops, publishes, and disseminates more than 300 consensus codes and standards intended to minimize the possibility and effects of fire and other risks. *See* http://www.nfpa.org/categoryList.asp?categoryID=143 (last visited June 6, 2013). NFPA codes and standards have been used as guidelines and standards by the Occupational Safety and Health Administration ("OSHA") and other worker safety-oriented organizations.

18. NFPA 69 sets forth Standards for Explosion Prevention Systems. NFPA 654 contains Standard for the Prevention of Fire and Dust Explosions from the Manufacturing,

Processing, and Handling of Combustible Particulate Solids. See http://www.nfpa.org/aboutthecodes/ (last visited June 6, 2013).

19. SSI described to Sun the advantages of a Suppression/Isolation system as opposed to a Venting/Isolation system. Specifically, on or about March 25, 2011, SSI advised Sun that "A benefit of using Suppression is that the event is contained within the unit and the Deflagration is extinguished."

20. Sun was concerned that the use of explosion venting could result in the release of a fireball and process materials into the surrounding neighborhood. Accordingly, an advantage of chemical suppression (as described by SSI) – specifically, that it would avoid a dust and fireball release to the roof-top of the Facility and surrounding residential area – was particularly appealing to Sun.

21. SSI provided Sun with marketing materials and information concerning Fike's explosion protection systems, and engaged in several meetings and other informal discussions with Sun about the systems. The Fike "Explosion Protection Application Profile" marketing materials provided to Sun by Fike and SSI contained the following representations:

    a.    "Fike's explosion protection solutions decrease the severity of the explosion to safe levels, and prevent catastrophic destruction."

    b.  "Chemical isolation prevents pressure piling and secondary explosion with interconnected equipment."

    c.  Explosion Suppression "extinguishes the flame within the dust collector, preventing fire damage."

22. SSI also provided Sun with a copy of Fike's "Explosion Protection Application Bulletin", also identified as Application Data Sheet 1005 (hereinafter "Fike Bulletin"), which advertises that use of explosion protection equipment will, among other things:

    a.  Prevent possible death or injury to personnel,

    b.  Minimize costly replacement and/or repair of the dust collector, and

    c.  Protect profits by reducing lengthy plant shutdown and loss of product.

23. The Fike Bulletin also contains representations that explosion suppression (a) "contains the explosion, preventing the release of pressure, fire, and toxic materials," (b) "greatly reduces the deflagration pressure to safe levels," (c) "extinguishes the combustion before fire is produced," and (d) "interfaces with process equipment (rotary valves, blowers, etc.) to enhance protection." The Fike Bulletin promoted the addition of an isolation system "to prevent flame or pressure from traveling through connected ducts or piping into other process equipment."

24. The foregoing references from the Fike Bulletin are consistent with Sun's objectives and the objectives of NFPA 69 and 654, such as avoiding injury to personnel and damage to equipment.

25. Of particular significance, the Fike Bulletin represented that "Fike systems are the most reliable," and that "Fike systems have never experienced a system failure in the field."

26.     The Fike Bulletin was provided to Sun by SSI, along with other marketing materials describing Fike's explosion protection systems, on March 28, 2011, with the purpose of convincing Sun to purchase a Fike system. The Fike Bulletin is also publicly available on Fike's website (*see* ftp://fike.com/pub/epdocs/AD1005.PDF) (last visited July 1, 2013), and was also included with a formal proposal for the isolation and suppression system submitted to Sun on or about March 29, 2011.

27.     On or about March 29, 2011, representatives of Fike and/or SSI met with Sun and others at the Facility, during which Sun showed SSI/Fike Sun's pre-mix operations and provided SSI/Fike with more information regarding the planned dust collection system for the pre-mix operations. In turn, SSI provided Sun with more information regarding Fike's explosion protection products for use in connection with that system.

28.     Fike's representatives advised Sun during this meeting that explosion venting was not considered necessary due to the installation of the explosion suppression system.

29.     Fike and/or SSI provided Sun with additional information and specifications regarding Fike's explosion suppression/ isolation systems and their proposed use for the Facility on various dates in 2012, including on or about March 28, 2012, April 2, 2012, and June 7-8, 2012.

30.     The formal proposals submitted to Sun on March 29, 2011 and April 3, 2012 for purchase of the explosion protection system proposed inclusion of the Fike explosion protection system to detect and chemically isolate a deflagration originating in the dust collector, "per the requirements of NFPA Standards 69 and 654."

31.     The March 29, 2011 and April 3, 2012 proposals also represented that, following the triggering of the chemical isolation system, the "[s]uppressant agent is released into any interconnected ducting that contains combustible material to prevent flame propagation."

7

32. On or around March 28, 2012, representatives of Fike/SSI met with Sun to discuss the selection of the dust collection and explosion suppression/isolation system. Sun intended to order the system following this meeting.

33. Although the price for a suppression and chemical isolation system was over $5,000 more than the price for an explosion venting system (an overall price increase for the system of approximately 25%), Sun was persuaded to purchase the suppression system based on the representations made by Fike and SSI concerning the benefits of the suppression system.

34. Sun was generally unfamiliar with the use of chemical isolation devices to protect against "blowback", i.e., a deflagration within the system blowing back into the building and all the connections. Accordingly, Sun reasonably relied on the representations made by, and the information and marketing materials provided by, Fike and SSI, in selecting an explosion protection system for purchase.

35. In or around May 2012, Sun asked SSI for advice regarding the proposed layout of the dust collection system in order to ensure the Fike isolation system was functional. Shortly thereafter, Sun modified the system layout.

36. In or around May 2012, Sun purchased a new dust collection system for its black ink production operations at the Facility that included the Fike explosion suppression and isolation system recommended by Fike and SSI. This new system was installed between approximately June and September 2012.

37. Installation of certain Fike equipment was required to be performed by a Fike Systems Technician or other qualified personnel trained by Fike. SSI was specifically identified in the documentation provided to Sun as an authorized Fike Protection Systems distributor, and was

8

specifically identified in that documentation as being authorized to furnish, install and test the Fike equipment.

38. On or about September 14, 2012, SSI representatives installed and performed a system "start-up" of the Fike explosion protection system.

39. As part of the installation, SSI represented that it verified the control panel functions, confirmed that the installation was per the Fike drawing, verified the wiring and hardware, and verified the mounting, among other things.

40. SSI did not complete the start-up of the Fike isolation and suppression system on this date.

41. On or about October 1, 2012, SSI represented that it performed additional activation and verification of the Fike isolation and suppression system, including (a) verifying the function of the trouble/alarm relays operation with the current dust collector interlock, and (b) installation and termination of both GCAs (gas cartridge actuators, located on the suppressant containers).

42. Also on or about October 1, 2012, SSI provided an inadequate system orientation to Sun's maintenance staff at the Facility.

43. The SSI representative performed the work on October 1, 2012 in his capacity as a Fike Certified Technician.

44. Following SSI's work on October 1, 2012, SSI (on its own behalf and of behalf of Fike) advised Sun that the installation and start-up of the Fike explosion protection system was complete.

45. A copy of the Fike/SSI "check out documentation" was left with Sun on October 1, 2012 following the completion of SSI's work, but SSI failed to provide Sun with a start-up "close out package" or to certify the Fike system.

46. Sun required the explosion protection system to be online and functional before it would start up the new dust collection system. Sun also required that Fike and SSI provide initial training to Sun personnel who operate, maintain, supervise or are exposed to equipment and processes protected by Fike's explosion prevention system. In reliance on Fike and SSI's representation that the system had been properly started up and checked out, and was now operational, on or about Friday, October 5, 2012, Sun placed the new dust collection and explosion suppression system into operation.

47. On or about 1 pm on Tuesday, October 9, 2012 – the first full day of regular operations for the new system – a fire ignited in the pre-mix dust collection system. Shortly thereafter, the Fike explosion protection system was triggered, releasing pressure and suppressant agent into the dust collection system, which resulted in a fire and explosion that injured numerous workers and caused severe damage to the Facility.

48. The suppressant agent from the isolation unit failed to adequately infiltrate the interconnected ducting that contained combustible material, and therefore failed to prevent subsequent flame propagation and explosion.

49. Contrary to the representations made by Fike and SSI, the Fike explosion protection system did not suppress and isolate the fire.

50. Further, Fike and SSI had represented to Sun – including in the proposals, the Fike Bulletin, the Fike Application Profile, oral conversations, and other written materials – that the Fike system would comply with NFPA 69 and another industry standard, FM 5700, and that the system would otherwise contain an audible alarm.

51. Contrary to the representations made by Fike and SSI, the Fike explosion protection system did not comply with NFPA 69 or FM5700, including because it did not contain an audible alarm as required by those standards and as represented by Fike and SSI.

52. As a direct result of the activation of the Fike system and failure of the Fike system to suppress and isolate the fire, an explosion and fire occurred at the Facility that injured seven Sun employees and caused extensive damage to the systems and equipment in the pre-mix room, necessitating replacement and/or repair.

53. The injuries to Sun's employees would also have been avoided had the Fike system complied with NFPA 69 and FM 5700, or otherwise contained an audible alarm, as SSI and Fike represented it would.

54. As a direct result of the activation of the Fike system and failure to suppress and isolate the fire, and of SSI and Fike's other misrepresentations, Sun's pre-mix operations at its East Rutherford facility were completely shut down for several months, and, to date, still have not returned to their regular operations.

55. As a direct result of the activation of the Fike system and failure to suppress and isolate the fire, and of SSI and Fike's other misrepresentations, various federal, state and local agencies, including the Chemical Safety and Hazard Investigation Board ("CSB") and OSHA, conducted and/or are still conducting investigations regarding the October 9 explosion and fire, resulting in additional costs to Sun and delays in restoring the pre-mix operations at the Facility. For example, CSB commenced on-site investigations at Sun's Facility on Tuesday, October 15, 2012, and did not release the Facility to Sun until nearly two months later, on Monday, December 10, 2012. While CSB had custody of the Facility, Sun was unable to conduct any repair or restoration activities.

Furthermore, although OSHA recently concluded its investigation, CSB's investigation is still ongoing.

56. As of the date of the filing of this Complaint, documents on Fike's website still attest that "Fike systems have never experienced a system failure in the field" – notwithstanding the failure of the Fike system to prevent the October 9, 2012 explosion and fire at Sun's US Ink Facility.

## GENERAL ALLEGATIONS

57. Sun purchased the Fike suppression and isolation system for the express purpose of extinguishing a fire within the pre-mix dust collection system.

58. Fike and SSI represented to Sun that the Fike explosion suppression and isolation system would minimize costly replacement and/or repair of the associated equipment, prevent possible death or injury to personnel, and protect profits by reducing lengthy plant shutdown and loss of product.

59. Fike and SSI also represented that their explosion protection systems would contain the explosion (preventing the release of pressure, fire, and materials), greatly reduce the deflagration pressure to safe levels, extinguish the combustion before fire is produced, and prevent flame or pressure from traveling through connected ducts or piping into other process equipment.

60. Fike and SSI also represented that their explosion protection system would comply with NFPA 69 and FM 5700, and would otherwise contain an audible alarm.

61. SSI, on its own behalf as a factory authorized and trained fire protection solutions provider and New Jersey-licensed Fire Protection Equipment Contractor, as well as in its capacity as an authorized Fike representative and technician, represented to Sun that the Fike explosion protection system was properly installed and tested, and that the system was fully operational in accordance with NFPA standards.

62. On October 9, 2012, on its first full day of operation, a fire ignited within the premix dust collection system.

63. The Fike system failed to put out the fire in the pre-mix dust collection system and to prevent injury to Sun's workers and interconnected equipment. Accordingly, the Fike system purchased by Sun failed to deliver the results promised by Fike and SSI.

64. The Fike system failed to comply with NFPA 69 and FM 5700, and otherwise failed to contain an audible alarm.

65. The representations made by Fike and SSI in the aforementioned oral conversations, marketing materials, proposals and other documents, including an engineering submittal, contained numerous misrepresentations, including as follows:

   a. The system would comply with NFPA 69 and FM 5700;

   b. The system would contain an audible alarm;

   c. The system received approval from FM;

   d. Fike would provide detailed training to Sun employees on the use of the system; and

   e. The system had never experienced any failures in the field.

66. As discussed above, each of these representations was false.

67. Fike's continued representation on its website that "Fike systems have never experienced a system failure in the field" is unconscionable and exhibits an absence of good faith, honesty, and fair dealing.

68. Sun reasonably relied on the representations made by, and the information and marketing materials provided by, Fike and SSI, in selecting an explosion protection system for purchase.

13

69. Sun reasonably relied on the professional expertise, advice, and direction of SSI when SSI performed the installation and start-up of the Fike explosion protection system and trained Sun's employees on the use of the system, and advised Sun that the system was ready to put into operation.

70. As a direct result of Fike and SSI's failure to provide the product and services as represented and promised, Sun's production of black news ink has been severely disrupted, and Sun has otherwise suffered economic damages, including, but not limited to, cost of replacement and repair of the systems and equipment damaged by the explosion and fire, lost employee productivity, worker's compensation costs, costs for responding to the CSB and OSHA investigations, and lost revenues and profits due to the lengthy shutdown of parts of the Facility and loss of product.

71. The CSB, OSHA and other state, federal and local governmental investigations commenced at the Facility as a result of the failure of the Fike explosion protection system to deliver the results promised by Fike and SSI and prevent the explosion and fire greatly extended the shutdown of the Facility operations and cost Sun hundreds of thousands of dollars in attorneys' and expert fees.

## FIRST CAUSE OF ACTION: VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT

72. Sun repeats and realleges the allegations contained in Paragraphs 1 through 65 as if fully set forth herein. This claim against Fike and SSI alleges violations of the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann § 56:8-1 et seq.

73. Fike and SSI provided Sun with Fike's marketing materials and additional oral and written information and representations concerning Fike's explosion prevention systems, misrepresenting and falsely promising that:

    a. The system would comply with NFPA 69 and FM 5700;

14

      b. The system would contain an audible alarm;

      c. The system received approval from FM;

      d. Fike would provide detailed training to Sun employees on the use of the system; and

      e. The system had never experienced any failures in the field.

74. Fike and SSI made these misrepresentations with the intention that Sun would rely on them.

75. Fike and SSI engaged in unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts with the intention that Sun would rely on Fike and SSI's representations.

76. In reliance on Fike and SSI's unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts regarding the performance of its suppression and isolation systems, Sun purchased a Fike explosion suppression and isolation system for the Facility.

77. In reliance on SSI's unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts, Sun placed the dust collection and Fike explosion protection system into operation at the Facility.

78. Sun's reliance on Fike's and SSI's statements and unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts concerning Fike's suppression and isolation systems was reasonable.

79. At the time Fike and SSI engaged in unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts, Sun did not know that these promises and representations were false.

80. Sun has suffered economic damages as a result of Fike and SSI's unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts. These damages include cost of repair and/or replacement of equipment and systems damaged in the fire, lost employee productivity, worker's compensation costs, and lost revenues and profits due to loss of product and the lengthy shutdown of parts of the Facility.

81. Fike's and SSI's unconscionable commercial practices, deception, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts are the proximate cause of the damages sustained by Sun.

82. Accordingly, pursuant Section 56:8-19 of the CFA, Sun is entitled to recover compensatory damages, treble damages, attorneys' fees, and the costs of bringing this action.

## **PRAYER FOR RELIEF**

WHEREFORE, Sun hereby demands judgment against Defendants Fike and SSI: i) Awarding Sun compensatory, incidental and consequential damages, including, without limitation, the cost to replace and/or repair the equipment damaged or destroyed in the October 9, 2012 explosion and fire, lost revenues and profits due to the lengthy plant shutdown, lost employee productivity, worker's compensation costs, and costs associated with the governmental investigations; ii) Awarding Sun treble damages for Fike and SSI's violation of the CFA; iii)

Awarding Sun interest, costs of suit, attorneys' fees, and expert witness fees; and iv) Awarding Sun any other such relief as this Court deems just and proper.

PLAINTIFF DEMANDS A JURY TRIAL AS TO ALL CLAIMS SO TRIABLE IN THIS ACTION.

Dated: January 18, 2022                    By: */s/ Lance J. Kalik*
                                           Lance J. Kalik
                                           Riker Danzig Scherer
                                           Hyland & Perretti, LLP
                                           Headquarters Plaza
                                           One Speedwell Avenue
                                           Morristown, NJ 07962-1981
                                           (973) 538-0800

5295639v2