**Not for Publication**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

SUN CHEMICAL CORPORATION,

*Plaintiff,*

v.

FIKE CORPORATION AND SUPPRESSION SYSTEMS INCORPORATED,

*Defendants.*

---

Civil Action No. 13-4069

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This case arises from an explosion that occurred at Plaintiff Sun Chemical Corporation's ("Sun") ink manufacturing plant in East Rutherford, New Jersey. Plaintiff alleges that Defendant Fike Corporation ("Fike") and Defendant Suppression Systems, Inc., ("SSI") (collectively, "Defendants") violated New Jersey's Consumer Fraud Act ("CFA") when Defendants misrepresented the characteristics of their product as protective against certain fires and explosions. Currently pending is Defendants' appeal of Magistrate Judge Kiel's decision permitting Plaintiff to amend the Complaint to include allegations as to "the alarm theory." D.E. 272. The Court reviewed all submissions,[1] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons that follow, Judge Kiel's decision is **affirmed**.

---

[1] In this Opinion, Plaintiff's Complaint (D.E. 1) will be referred to as "Compl." Defendants' brief in support of their appeal (D.E. 272) will be referred to as "Defs. Br." Plaintiff's brief in opposition (D.E. 276) will be referred to as "Pl. Opp. Br." Defendants' reply brief (D.E. 277) will be referred to as "Defs. Reply."

## I.   BACKGROUND

This case has a lengthy history, and the Court only recounts the relevant history as necessary resolve the current appeal.

Plaintiff manufactures inks. Compl. ¶ 8.  SSI sells and installs explosion and fire protection systems.  *Id.* ¶ 14. In the beginning of 2011, Plaintiff considered purchasing and implementing a new dust collection system, including an explosion protection system with isolation and suppression capabilities, for its black ink pre-mix operations in East Rutherford, New Jersey.  *Id.* ¶¶ 10-11.  In March of that year, representatives of Plaintiff and SSI, a wholly owned subsidiary of Fike, began communicating about explosion suppression systems.  *Id.* ¶¶ 5, 13.  Plaintiff expected any system that SSI recommended would comply with National Fire Protection Association ("NFPA") Standards 69 and 654.  *Id.* ¶ 16.  SSI sent Sun marketing materials regarding Fike's systems, and representatives of both Defendants met with Plaintiff at its facility in East Rutherford.  *Id.* ¶¶ 21, 27.  Defendants continued to send information and proposals to Sun for over a year.  *Id.* ¶ 29.  Defendants included two proposals that represented that a particular system had a component system that would satisfy standards 69 and 654 promulgated by the NFPA.  *Id.* ¶ 30.  Because Plaintiff lacked Defendants' technical knowledge, Plaintiff relied on Defendants' representations during the sales process.  *Id.* ¶ 34.

In May 2012, Plaintiff bought a dust collection system from Defendants.  *Id.* ¶ 36.  It was installed between June and September of 2012.  *Id.*  On, October 9, 2012, Plaintiff began regular operations with the new dust collection system.  *Id.* ¶ 47.  At approximately 1:00 p.m., the system failed, and an explosion occurred, injuring seven of Plaintiff's employees and causing extensive property damage that required Plaintiff to shut down operations in East Rutherford for at least several months.  *Id.* ¶¶ 47-51.

2

In its summary judgment submissions, Plaintiff claimed that Defendants' misrepresentations cost Plaintiff $1,264,167.05 in workers' compensation costs; $1,976,471.66 in administrative costs; $227,162.45 in additional labor costs; $958,699.16 in distribution costs; $219,506.42 in property-related costs; and $528,566.85 in litigation costs. D.E. 215 at 6 (citing Plaintiff's Statement of Material Facts ¶¶ 141-147, 152-154).

## II.   PROCEDURAL HISTORY

On July 1, 2013, Plaintiff filed its initial Complaint. D.E. 1. Plaintiff alleged that Defendants violated the New Jersey Consumer Fraud Act ("CFA"), N.J. Stat. Ann. § 56:8-1 *et seq.*, by engaging "in unconscionable commercial practices, fraud, false pretenses, false promises, misrepresentations, and the knowing concealment, suppression, or omission of material facts" related to promises made about the performance of the system. Compl. at ¶¶ 66-75. The parties completed fact discovery on May 29, 2015. *See* D.E. 73. On June 29, 2016, Plaintiff served the expert reports of Dr. Patrick F. Murphy and Dr. Timothy Myers. D.E. 276-3 at 2; D.E. 276-4 at 2. Dr. Murphy was deposed on August 19, 2016, and Dr. Myers was deposed on September 21, 2016. D.E. 276-18; D.E. 276-19.

Plaintiff and Defendants moved for summary judgment in February 2017, D.E. 167; D.E. 168, and the Court granted Defendants' motion and denied Plaintiff's motion in December 2017, D.E. 215; D.E. 216. Plaintiff appealed to the United States Court of Appeals for the Third Circuit on January 9, 2018. D.E. 219. The parties finished their appellate briefing in August 2018 and the Third Circuit heard oral argument in January 2019. D.E. 253 ("Mag. Op.") at 2. On April 18, 2019, the Third Circuit certified questions of New Jersey law regarding the interplay between the CFA and the New Jersey Products Liability Act, N.J. Stat. Ann. § 2A:58C-1, *et seq.*, to the Supreme Court of New Jersey. *Sun Chem. Corp. v. Fike Corp.*, No. 18-1062, 2019 WL 9525200,

at *1 (3d Cir. Apr. 18, 2019).  The Supreme Court of New Jersey issued an opinion on July 29,

2020.  *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145 (N.J. 2020).  The Third Circuit then, on

November 27, 2020, issued an opinion affirming in part and reversing in part this Court's summary

judgment decision.  *Sun Chem. Corp. v. Fike Corp.*, 981 F.3d 231 (3d Cir. 2020).  The Third

Circuit declined to rehear the case on December 22, 2020.  Mag. Op. at 2. The Third Circuit's

mandate was entered on the Court's docket on December 30, 2020.  D.E. 227.

On July 26, 2021, Defendants moved to dismiss the Complaint or to prevent Plaintiff from

proceeding under "the alarm theory."  D.E. 234 at 2.  On August 9, 2021, Plaintiff cross-moved

pursuant to Federal Rule of Civil Procedure 15(a)(2) to amend the Complaint to add specific

allegations regarding the alarm theory.  D.E. 235-1 at 15; *see also* D.E. 236-1 (proposed amended

complaint).  The Court administratively terminated Defendants' motion while Judge Kiel decided

the cross-motion.  D.E. 238.  While Plaintiff's motion to amend was pending, Defendants filed

motions to strike three of Plaintiff's experts pursuant to Federal Rule of Evidence 702.  D.E. 245;

D.E. 246; D.E. 247.  Plaintiff thereafter filed its own motion pursuant to Rule 702.  D.E. 248.

Those motions have not yet been decided.

On November 15, 2021, Magistrate Judge Kiel granted Plaintiff's motion to amend,

allowing Plaintiff filed to file an amended complaint as to the alarm theory.  D.E. 253.  Defendants

then filed and withdrew a motion for reconsideration before Judge Kiel, D.E. 257; D.E. 266, and

appealed his decision to this Court on January 28, 2022, D.E. 272.  Plaintiff filed opposition, D.E.

276, to which Defendants replied.  D.E. 277.

## III.  STANDARD OF REVIEW

A magistrate judge may hear and determine any non-dispositive pretrial matter pursuant to

28 U.S.C. § 636(b)(1)(A).  Motions to amend are generally considered non-dispositive.  *Patel v.*

*Meridian Health Sys., Inc.*, 666 F. App'x 133, 136 (3d Cir. 2016).  A district court may only reverse a magistrate's decision on such a matter if it "is clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A).  "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Anderson v. City of Bessemer City,* 470 U.S. 564, 573 (1985) (quoting *United States v. U.S. Gypsum Co.,* 333 U.S. 364, 395 (1948) (internal quotation omitted)).  Under this standard, a district court "will not reverse the magistrate judge's determination even if the court might have decided the matter differently."  *Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002).  A magistrate judge's ruling "is contrary to law when he or she has 'misinterpreted or misapplied applicable law.'"  *United States v. Sensient Colors, Inc.*, 649 F. Supp. 2d 309, 315 (D.N.J. 2009) (quoting *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008)).  A district court will, therefore, "conduct a de novo review of a magistrate judge's legal conclusions."  *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998).

## IV.  ANALYSIS

Pursuant to Rule 15(a)(2), a court must "freely give leave" to amend a pleading "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  "Rule 15 embodies both a 'liberal approach to pleading' and a 'clear preference . . . for merits-based decision making.'"  *Broschart v. Husqvarna AB*, No. 20-18795, 2022 WL 1082617, at *3 (D.N.J. Apr. 11, 2022) (quoting *Se. Pa. Transp. Auth. v. Orrstown Fin. Servs. Inc.*, 12 F.4th 337, 344-45 (3d Cir. 2021) (alteration in original)).  "Thus, leave to amend ordinarily should be denied only when amendment would be inequitable or futile."  *Schomburg v. Dow Jones & Co.*, 504 F. App'x 100, 103 (3d Cir. 2012).  In other words, courts should freely grant leave, "[i]n the absence of any apparent or declared reason—such as undue

delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, *etc*.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "The *Foman* factors are not exhaustive," and a court may consider additional equitable factors, "such as judicial economy/burden on the court and the prejudice denying leave to amend would cause to the plaintiff." *Mullin v. Balicki*, 875 F.3d 140, 149-50 (3d Cir. 2017) (footnotes omitted).  But "prejudice to the non-moving party is the touchstone for the denial of an amendment." *Id.* at 150 (footnote omitted) (quoting *Arthur v. Maersk, Inc.*, 434 F.3d 196, 204 (3d Cir. 2006) (internal quotation marks and citation omitted)).

"Delay alone is not sufficient to justify denial of leave to amend." *Arthur*, 434 F.3d at 204. "The mere passage of time does not require that a motion to amend be denied on grounds of delay[,]" *Cureton v. Nat'l Collegiate Athletics Ass'n*, 252 F.3d 267, 273 (3d Cir. 2001), and "[t]here is, of course, no presumptive period in which a motion for leave to amend is deemed 'timely' or in which delay becomes 'undue.'" *Arthur*, 434 F.3d at 205.  Indeed, the Third Circuit has observed that "*Foman* itself involved a Rule 59(e) motion to alter or amend the judgment." *Bivings v. Wakefield*, 316 F. App'x 177, 180 (3d Cir. 2009); *see also Heyl & Patterson Int'l, Inc. v. F.D. Rich Housing of V.I., Inc.*, 663 F.2d 419, 425-27 (3d Cir. 1981) (affirming district court's decision to allow amendment of the answer to raise affirmative defense after opening arguments at trial).

Instead, "[d]elay becomes 'undue,' and thereby creates grounds for the district court to refuse leave, when it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Bjorgung v. Whitetail Resort, LP*, 550 F.3d 263, 266 (3d Cir. 2008); *Cureton*, 252 F.3d at 273 ("[T]he question of undue delay requires that we focus on the

6

movant's reasons for not amending sooner.").  The Third Circuit has affirmed "denials of motions

for leave to amend where the moving party offered no cogent reason for the delay in seeking the

amendment."  *CMR D.N. Corp. v. City of Phila.*, 703 F.3d 612, 629 (3d Cir. 2013) (collecting

cases).

      "Incidental prejudice is not a sufficient basis for the denial of a proposed amendment.

Prejudice becomes undue when a party shows that it would be 'unfairly prejudiced' or deprived of

the opportunity to present facts or evidence which it would have offered."  *Morton Int'l, Inc. v.*

*A.E. Staley Mfg. Co.*, 106 F. Supp. 2d 737, 745 (D.N.J. 2000).  Factors that courts consider in

deciding whether granting leave to amend would cause undue prejudice include, "whether the

assertion of the new claim would: (i) require the opponent to expend significant additional

resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the

dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction."  *Long*

*v. Wilson*, 393 F.3d 390, 400 (3d Cir. 2004) (quoting *Block v. First Blood Assocs.*, 988 F.2d 344,

350 (2d Cir. 1993)).  The burden is on the non-moving party to show that amendment would be

prejudicial.  *See Am. Gen. Life Ins. Co. v. Altman Fam. Ins. Tr. ex rel. Altman*, No. 08-399, 2009

WL 5214027, at *3 (D.N.J. Dec. 22, 2009).  In addition, "[r]elying on the *Foman* factors, courts

can choose instead to impose reasonable conditions on the right to amend in lieu of a pure grant

or denial."  *Mullin*, 875 F.3d at 150.

      Defendants argue that Judge Kiel's decision must be overturned because an amendment

would be futile on account of the statute of limitations.  Defs. Br. at 32-34.  Plaintiff counters that

Defendants did not make this argument before Judge Kiel and have therefore waived it.  Pl. Opp.

Br. at 11.  The Court agrees with Plaintiff, and "will not overturn Judge [Kiel's] decision on an

argument Defendants failed to fully argue before him."  *Callas v. Callas*, No. 14-7486, 2019 WL

449196, at *3 (D.N.J. Feb. 4, 2019) (citing *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 177 F.R.D.

205, 211 (D.N.J. 1997)).  Defendants' argument regarding Plaintiff's bad faith, *e.g.*, Defs. Br. at

31, fares no better, as this argument was not made before Judge Kiel either.

Turning to the remainder of Defendants' arguments, they contend that Judge Kiel did not

adequately assess the prejudice to them.  Defs. Br. at 28-32.  Defendants note that Plaintiff did not

plead the alarm theory in its Complaint.  *Id.* at 1.  The Court agrees, and found as much in the

summary judgment opinion:

> As an initial matter, and as Defendants call attention to, Plaintiff
> seems to almost completely abandon this Blowback Theory in its
> motion for summary judgment.  Defs. Opp. at 5-7.  Instead of the
> Blowback Theory, Plaintiff's motion argues that the Fike System
> either did not have an audible alarm as Defendants promised, Pl. Br.
> 32-34 ("[H]ad the Fike system contained an audible alarm, as
> promised by Fike/SSI, Sun's workers would have, pursuant to their
> training, evacuated the building upon hearing the alarm."), or that
> the audible alarm did not function as promised, Pl. Br. at 18-19
> ("[Plaintiff's expert] determined that the Fike system alarm, which
> had a less than 5 dB reading . . . was not considered audible by
> [certain industry standards].").  Plaintiff now claims that Plaintiff's
> workers did not leave the explosion area and were injured by the
> explosion because they did not hear any alarm.  Pl. Br. 32-34. *The
> Complaint, however, fails to raise this theory of liability.*  In fact,
> the Complaint only mentions an alarm once, in passing, and never
> discusses any absence or failure of any audible alarm.  Plaintiff
> never amended its Complaint to assert its Alarm Theory.  The Court
> agrees with Defendants that Plaintiff changed its theory of the case
> after filing its Complaint.  However, Defendants fail to request any
> relief based on Plaintiff's modification.   Therefore, the Court
> considers Plaintiff's *post hoc* Alarm Theory on the merits in
> deciding the motions.

D.E. 215 at 9 (emphasis added) (footnote omitted).  In a footnote, the Court explained that it had

scoured the Complaint for traces of the alarm theory, finding only the following:

> Paragraph 41 of the Complaint states: "On or about October 1, 2012,
> SSI represented that it performed additional activation and
> verification of the Fike isolation and suppression system, including
> (a) verifying the function of the *trouble/alarm relays* operation with

8

the current dust collector interlock, and (b) installation and termination of both GCAs (gas cartridge actuators, located on the suppressant containers)" (emphasis added). This is the Complaint's only mention of an alarm related to the Fike System.

*Id.* at 9 n.5 (emphasis in original); *see also* Defs. Br. at 3 ¶ 3 (quoting Judge Ambro's question during oral argument before the Third Circuit, "[w]here in your complaint is there anything relating to the audible alarm theory?"). The Court, therefore, disagrees with Plaintiff's argument that the Complaint put Defendants on notice of the alarm theory. *See* Pl. Opp. Br. at 22-23.

Similarly, the Court agrees with Defendants that Plaintiff's answer to Defendants' interrogatory number six did not raise the alarm theory either, as it focuses primarily on mechanical failures and is otherwise vague as to Defendants' alleged misrepresentations. *See* Defs. Br. at 4-12.

But the Court disagrees with Defendants' contentions regarding Judge Kiel's conclusion as to undue prejudice. This case spent much time on appeal and out of this Court's hands. As Judge Kiel pointed out, "the case was tied up in appellate proceedings for three years." Mag. Op. at 4. "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "'Divest' means what it says—the power to act, in all but a limited number of circumstances, has been taken away and placed elsewhere." *Venen v. Sweet*, 758 F.2d 117, 120-21 (3d Cir. 1985) (footnote omitted). In short, the Court did not have authority to address a motion to amend the Complaint while the case was on appeal. In its petition to the Supreme Court of New Jersey, the Third Circuit expressly "retain[ed] jurisdiction over the appeal pending resolution of this request for certification." *Sun Chem. Corp.*, 2019 WL 9525200, at *5. Accordingly, the Court cannot fault Judge Kiel for reasoning that the length of the appellate proceedings weighed against

9

a finding of inequitable conduct on Plaintiff's part and shortened the amount of time that Plaintiff willfully delayed from moving to amend.

In his opinion, Judge Kiel observed that Plaintiff's expert reports discussed the failure of the system to satisfy industry standards as to the alarm's audibility.  Mag. Op. at 4.  Judge Kiel also noted that "plaintiff served interrogatories and sought Rule 30(b)(6) depositions in 2014 and 2015 concerning the System's compliance with industry standards, and with NFPA 69 and FM 5700 in particular."  *Id.*  It appears that Judge Kiel meant that Plaintiff thereby put Defendants on notice of the alarm theory.  In fact, Defendants seem to agree on this point. *See* Defs. Br. at 23 ¶ 36 (alleging that Plaintiff introduced alarm theory in Drs. Murphy and Myers's reports). Defendants seemingly indicate that Plaintiff's experts disclosed the alarm theory in early 2016. *See id.* at 23 ¶ 90 (positing without citation to deposition that "Plaintiff's expert, Dr. Timothy Myers, admitted during his deposition that the panel buzzer/alarm causation theory was one devised by him long after the filing of the initial complaint.").  Therefore, the "delay period" ran from the first half of 2016 until January of 2018 and then from January of 2021 until August 9, 2021.  The total period of delay of approximately two-and-a-half years has not been found to be presumptively unreasonable.  *Arthur*, 434 F.3d at 205.  Although Plaintiff did not address its delay in seeking to amend the Complaint in its submission to Judge Kiel, *see generally* D.E. 235-1, and largely elides the question in its opposition brief, *see* Pl. Opp. Br. at 30-31, Judge Kiel's reasoning is not clearly erroneous.[2]

---

[2] Plaintiff argues that its motion to amend could not have come sooner because "Sun seeks only to add detail to its pre-existing CFA claims in a manner consistent with the Third Circuit's formulation of this case's triable issues and as set forth in its expert reports."  Pl. Opp. Br. at 24. The Third Circuit noted that "[o]n remand, Fike may renew its pleading challenges if it so chooses and if the District Court does not grant Sun leave to amend under Federal Rule of Civil Procedure 15(a)(2)."  *Sun Chem.*, 981 F.3d at 240 n.4.  At the same time, Plaintiff does not provide a good

Defendants counter that this belated introduction is prejudicial precisely because it was accomplished through expert reports produced after the close of fact discovery, thereby hindering Defendants' ability to muster an appropriate defense.  Defs. Br. at 23, 30.  But Defendants had the opportunity to produce responsive reports and also deposed Dr. Murphy and Dr. Myers.  They moved to exclude expert testimony under Evidence Rule 702.  *E.g.*, D.E. 131 (defense motion to exclude Dr. Murphy's report and testimony regarding, *inter alia*, the alarm theory).  Defendants also prepared an expert report opining that additional warnings would not have impacted causation.  D.E. 276-21 at 18-20.  Finally, Defendants litigated the alarm theory on summary judgment, without requesting any relief premised on Plaintiff's modification.  *See* D.E. 215 at 9.  Thus, despite being on notice of the theory and actively litigating it, Defendants never sought to reopen fact discovery.  Further, Defendants' arguments as to the need for additional discovery are largely conclusory.  *See* Pl. Opp. Br. at 25.  Defendants aver that they would have "to redo all of the depositions and the discovery undertaken prior to the surprise introduction of the new theory."  Defs. Br. at 30.  But Defendants do not identify with any precision additional discovery that is needed.[3]

Both sides discuss the decision in *Stolinski v. Pennypacker*, No. 07-3174, 2011 WL 13238545 (D.N.J. June 23, 2011), *aff'd*, 2011 WL 3608685 (D.N.J. Aug. 15, 2011).  In *Stolinski*, the plaintiff, a New Jersey State Police Officer, was charged with a number of crimes for allegedly submitting false information when applying for credit cards.  2011 WL 13238545, at *1.  The State

---

reason as to why it could not have moved earlier to amend its Complaint in a manner consistent with its expert reports on the "alarm theory."

[3] However, to ameliorate any potential prejudice, Defendants may move to reopen discovery as to the alarm theory.  *Mullin*, 875 F.3d at 150; *cf. Morton Int'l*, 106 F. Supp. 2d at 745.  Judge Kiel shall oversee any such motion or request.  Defendants must support such a request with reasonable specificity as to what additional discovery is needed and the reasons therefor.

of New Jersey dropped the charges, and the plaintiff sued the State, the State Police's Office of Professional Standards, and fellow officers for civil rights violations. *Id.* The district court then dismissed the entity-defendants, leaving only the individuals. *Id.* On February 16, 2011, the district court granted the remaining defendants' (three officers) summary judgment motion. *Id.* at *2. However, while the summary judgment motion was pending, plaintiff moved to amend the complaint. *Id.* The magistrate denied the motion. *Id.* at *10. The amended complaint would have added another six defendants and brought claims for First Amendment retaliation, equal protection and due process violations, and a conspiracy to violate plaintiff's civil rights. *Id.* at **9, 3. The magistrate found "that the prejudice to Defendants, as the non-moving parties, is sufficient in this instance to warrant denial of Plaintiff's motion to amend and supplement." *Id.* at *8.

 *Stolinski* is distinguishable. Whereas Stolinski sought to add new parties, Sun does not. Nor does Sun seek to add new claims arising out of an additional series of transactions or occurrences. The alarm theory is merely another theory to support a CFA violation during the pre-sale negotiations, which are already at the heart of this litigation. Allowing Plaintiff to amend the Complaint will not have the effect of essentially grafting a second litigation onto this case. *Cf. id.* at *10 ("[W]ith regard to the supplemental allegations, Plaintiff has already conceded that he 'could file a new and totally separate complaint that states causes of action based on the supplemental allegations.'") (citation to the record omitted).

 Finally, consistent with the Third Circuit's decision, Defendants may challenge Plaintiff's amended pleading through a motion to dismiss. D.E. 238.[4]

---

[4] Plaintiff also asks the Court to dismiss the appeal because Defendants' brief is overlength. Pl. Opp. Br. at 35-36. Defendants do not respond to this request. "Generally, a single violation of L. Civ. R. 7.2(b) will result only in a warning or, at a minimum, a comment by the Court." Lite, N.J. Federal Practice Rules, *Comment 3 to L. Civ. R. 7.2* (*GANN*). The Court will not impose the drastic

## V.  CONCLUSION

For the reasons set forth above and for good cause shown, Defendants' appeal (D.E. 272) is **DENIED** and Magistrate Judge Kiel's decision (D.E. 253) is **AFFIRMED**.  An appropriate Order accompanies this Opinion.

Date**:** June 1, 2022

_____
John Michael Vazquez, U.S.D.J.

---

remedy of dismissal.  However, the Court reminds the litigants that the Local Civil Rules are not suggestions and advises them to seek permission before filing overlength briefs.